SAMUEL OGDEN, Plaintiff in Error, *v.* JAMES STEWART and JOHN A. J. MURRAY, Defendants in Error.

### ERROR TO PEORIA.

Where the mortgagors of goods, such as wines, etc., with the knowledge of the mortgagee, are daily selling them out, and supplying themselves with others, it will be presumed, the mortgagee has waived his privilege of taking the goods on failure to pay; and he cannot reclaim them from the hands of third purchasers.

THIS was an action of replevin, commenced by Ogden, against the defendants, the sheriff of Peoria and his deputy. There was a trial, and a verdict of not guilty.

The evidence shows that Henry Amsler was keeping a hotel in the city of Peoria, Illinois, and had a stock of liquors on hand, which he was selling at the bar in the hotel, and that on the 7th day of February, 1861, he sold out the hotel furniture, etc., including a stock of liquors intended for sale, to Charles Bennet and Charles Harrison, who paid $700, and executed their five notes, amounting in the aggregate to $793.25, secured by chattel mortgage on the property sold. That at the time they purchased of Amsler, and executed the mortgage, Amsler was selling the liquors at the bar, and it was the understanding of Amsler, the mortgagee, that the mortgagors should go on selling the liquors. After the execution of the mortgage, Amsler remained at the house a week or ten days, and saw them constantly selling the mortgaged liquors, and after the mortgagee left the house, he returned several times, and always saw them selling the liquors, and never made any objection.

M. WILLIAMSON, for Plaintiff in Error.

The liquors were kept for sale, with the knowledge and consent of Amsler, and by express agreement with him, contrary to the terms of the mortgage. The mortgage provides, that the mortgagors shall retain possession, evidently for the purpose of security; but the possession was in fact by agreement of parties for the purpose of sale. 18 Ill. 402; 24 Ill. 645; 1 Scam. 296; 22 Ill. 146.

COOPER & MOSS, for Defendants in Error.

If A wilfully intermix his goods with those of B, and without B's consent, so that the goods of one cannot be distinguished from those of the other, the whole becomes the property of B. Black. Com. 2, 405, 406; Kent Com. 2, 364, marg. pag.

And if goods so mixed are still capable of being distin-

guished, it is the duty of the party who occasioned the confusion, to separate them, when the opportunity is offered, and if he fail to do so, he cannot complain if all are seized together. *Fuller* v. *Paige,* 26 Ill. 358.

The mortgage from Harrison & Bennet, to Amsler, was undeniably good between the parties to it. It was also good as to all subsequent purchasers, not *bona fide,* however it might be held as to creditors and innocent purchasers. *Hathorn* v. *Lewis,* 22 Ill. 395; *Davis* v. *Ransom,* 26 Ill. 100; *Fuller* v. *Paige,* 26 Ill. 358.

BREESE, J. We do not consider it necessary to go over the whole ground covered by the able arguments of the parties in this case, inasmuch as we base our decision on a single fact which has not been controverted.

The evidence shows, that Harrison & Bennet purchased certain liquors in barrels, half-barrels and bottles, of one Amsler, on the 7th of February, 1861, for which they executed their notes, and to secure the payment of them, also executed a chattel mortgage to the vendor covering the property purchased. They kept a tavern, with a bar for drinking, and sold from this stock of liquors from the time of the purchase until about the last of July, 1861, when their place of business was destroyed by fire. A few days after the fire, they sold out what remained of the liquors to the plaintiff, and delivered them to him. During this time, about six months, Harrison & Bennet replenished their stock by purchases of liquors in Peoria, St. Louis and Cincinnati, and they testified there was but little of the original stock left when they sold to the plaintiff.

After the delivery to the plaintiff, the defendants, who had sued out a writ of replevin for the goods against Harrison & Bennet, acting for Amsler, took possession of the goods under the writ, whereupon the plaintiff replevied them from the defendants, which is this action.

The defense, among other things, was, that the goods were the property of Amsler, and were not the property of the plaintiff, and that the sheriff and deputy sheriff of Peoria

county, having a writ of replevin for the goods at the suit of *Amsler* v. *Harrison & Bennet,* they took the goods, etc.

It was abundantly proved on the trial, that after the purchase by Harrison & Bennet of Amsler, he remained with them a week, during which time they were selling the liquors daily from this stock, and so continued, with Amsler's knowledge, and without objection from him, up to the day of the fire, and until the remnant was sold to the plaintiff.

The mortgage contains the usual provision, that the goods should remain with the mortgagors until all the notes became due, but reserves to the mortgagee the right to take possession of them and make his whole debt, if he chose, on default of payment of any note at maturity, or in case of a levy, or disposal of the same. The proof shows, that notwithstanding this clause, the mortgagors, with the full knowledge of the mortgagee, were selling daily from these liquors to their customers, and this, we think, was a waiver of this provision of the mortgage. Having allowed them to sell portions of the property, and which, from the nature of the transaction, was the main object of the purchase, and this selling was public and notorious, an authority was given to sell the remnant to the plaintiff or any other person. After this conduct on the part of the mortgagee, it would be fraud on any purchaser to repudiate their authority to make the sale. He should not now be allowed to deny their authority to dispose of the property, the more especially as the sale seems to have been *bona fide.* The judgment is reversed, and the cause remanded.

*Judgment reversed.*