# HENRY G. GREENEBAUM

*v.*

## CALVIN R. WHEELER.

1. CHATTEL MORTGAGE—*right of mortgagor to sell and use proceeds renders the transaction fraudulent.* Where a chattel mortgage is given on personal property, and the mortgagee, by a written agreement, gives the mortgagor the right to manufacture the materials and sell property, with the approval of the mortgagee, and to receive the price and retain a certain sum therefrom for each month to enable the mortgagor to run the business, pay hands and support his family, the mortgage will be fraudulent and void as against other creditors of the mortgagor.

2. To render such a security valid, as against third persons, the debtor must part with all right to appropriate the property to his own use during the existence of the lien, or the power to sell ·it and appropriate the proceeds of the sale to his own use.

APPEAL from the Circuit Court of Livingston county; the Hon. N. J. PILLSBURY, Judge, presiding.

Mr. A. E. HARDING, for the appellant.

Mr. L. E. PAYSON, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that one Keach was indebted to a number of persons in May, 1876. This indebtedness was evidenced by his promissory notes, which, for the purpose of having secured, were assigned to appellant, and Keach gave to him a chattel mortgage on the property in litigation, together with other property, to secure the notes. Contemporaneously with the execution of the mortgage, Keach and appellant entered into an agreement, by which it was stipulated that Keach was to manufacture all material on hand, or that he might thereafter receive, into wagons and carriages, and sell the same with appellant's consent and approval, and pay the proceeds to appellant. It recites: " And whereas, said John C. Keach is desirous of receiving enough of the proceeds of such sales to run his shop, pay hands and support his family during the continuation of said mortgage; now, the said Greenebaum hereby agrees, upon the payment to him by said Keach, or upon the receipt of such proceeds, to pay and allow to said Keach the sum of not exceeding $300 per month out of the proceeds of such sales,—provided so much money is received from such sales per month. Such sales may be made on time, with the approval of said Greenebaum."

Subsequently, Keach manufactured several wagons and sold them with appellant's consent, and the money was paid over to appellant and he applied it to the payment of the mortgage debt. Keach manufactured other wagons and sold them without the consent of appellant. The sales amounted to $1600, of which sum he retained $635. He made other sales and used the proceeds.

In carrying on the business, Keach lacked room to store the wagons and carriages manufactured from the mortgaged material, and he rented a part of a livery stable building about

100 rods from his shop, and he stored the carriages in controversy therein with others, and they remained there until the 13th day of November, 1876, when they were seized by appellee, a constable; on an execution issued on the 9th of that month. This portion of the livery stable was during all the time under the exclusive control of Keach. Appellant brought replevin for the property. By consent of parties, the case was tried by the court without a jury, and the court found the issues for defendant, and rendered judgment in his favor. Plaintiff appeals, and asks a reversal because the finding is against the evidence.

A chattel mortgage is regarded in law as a conditional sale of the property mortgaged, and, like other sales, it was regarded as fraudulent to permit the vendor to retain its possession after the sale. Possession thus held was regarded as a fraud *per se*, as to creditors and purchasers, and incapable of explanation. The same rule was adopted in reference to retention of chattels under mortgage, by the mortgagor. But our statute has changed the common law rule, and permits the mortgagor to retain possession when the mortgage in terms so provides and it is not for a longer period than two years, nor longer than until the maturity of the mortgage debt.

This case, in most of its features, is like *Davis* v. *Ransom*, 18 Ill. 396. The principal difference is, that here it required the consent of the mortgagee to authorize the mortgagor to sell the property, and there it did not, and here the mortgagor is to receive out of the proceeds of the sales thus made not more than $300 per month, to enable him to carry on the business, pay his hands and support his family during the continuance of the mortgage. In that case the mortgagor was to have no part of the proceeds of the sales.

Here, as there, there was an effort to tie up the property so as to prevent its being reached by other creditors, and to enable the mortgagor to go on with business as usual. Here, the mortgagor not only retained possession of the property, but with it he carried on the business as usual, and from the

business he drew the means of conducting it; and not only so, but for the support of his family. If this was not intended to defraud other creditors, it certainly was well calculated to do so, as it placed all of Keach's property beyond their reach for fifteen months, and enabled him to carry on his business with the property precisely as though it was not incumbered. If this mortgage could be sustained, the mortgagor would only have, with the consent of the mortgagee, to renew the mortgage from time to time, or make a similar one to some one else when this matured, to be able to carry on his business in defiance of his other creditors, and derive from the sale of the mortgaged property a support for his family.

Where a lien is ostensibly created on personal property by mortgage or pledge, and the right is retained by the mortgagor or pledgor to sell the property and appropriate the proceeds to his own use, such a transaction must be held to be against the policy of the law, as tending to delay and defraud creditors. As between the parties themselves it would, no doubt, be binding, but void as to creditors. If such mortgages or pledges were sanctioned, it would form one of the most convenient and effectual means of hindering and delaying creditors in collecting their debts that could be devised. To render such securities valid, the debtor must part with all right to appropriate the property to his own use beyond the time the mortgage shall continue in force, or the power to sell it and appropriate the proceeds of the sale to his own use. The power to dispose of the property thus pledged by the mortgagor is inconsistent with the nature of such a security, and is prohibited by the policy of the law.

This transaction has all the appearance of a mere cover to enable Keach to carry on his business, make profits and support his family as though the mortgage had not been given, and thereby hold his other creditors at bay.

We think this transaction, as evidenced by the mortgage and written agreement, was fraudulent as to creditors, and the

court below did right in so holding, and the judgment in favor of the levy under the execution must be affirmed.

*Judgment affirmed.*